*412 OPINION.
TRammell:
The petitioner contends that the respondent erred in including in its gross income for each of the years 1924 and 1925 the amount of $7,000 constructively received by it as lessor from Schmidt as lessee to provide for the retirement of portions of its preferred stock.
The evidence indicates that it has been the custom in Indiana for a number of years to make practically all large loans on real estate in the form of a preferred stock issue instead of a bond issue secured by a mortgage. The reason for the custom as shown by the evidence is that the bonds are subject to property tax whereas the preferred stock is free from tax in the hands of the holders. By circumscribing the rights of the corporation and of the common stockholders the *413 preferred stockholders have substantially the same protection as under a bond issue and, by a proxy for the voting of the common stock being held by some one for them, their desires can be carried out more expeditiously than under a bond issue.
The'petitioner urges that Schmidt’s sole object in forming the petitioner corporation was to obtain a loan of $70,000 and that the payments of $7,000 in 1924 and 1925 constitute contributions to the capital of the petitioner and represent an additional price paid by Schmidt for his common stock.
It is not disputed that the petitioner was legally organized or that its existence has never been questioned by the State of Indiana, or that the various proceedings, agreements, leases, etc., are legal and are what they purport to be, or that the agreements have not been or are not being carried out. Nor is it denied that the petitioner constructively received the amounts in controversy. The question, therefore, is, Did the amounts constitute income to the petitioner, or were they capital contributions by Schmidt?
The evidence indicates that at the formation of the petitioner Schmidt turned in to it certain real and personal property having a total appraised value of $152,383, for which he received $35,000 par value common stock of the petitioner and the proceeds from the sale to the investment company of the $70,000 par value of the preferred stock. Schmidt leased from the petitioner certain of the property so turned in to it and as “ rental ” for the property agreed, among other things, to pay the amounts here in controversy. Although at the time of organization Schmidt paid in to the petitioner assets of an appraised value of approximately $50,000 in excess of the par value of the common stock and the proceeds from the sale of the preferred stock received by him, the petitioner urges that he was still making payments thereon at the rate of $7,000 per year during 1924 and 1925 and to 1928, after which time larger payments are to be made.
Throughout the various instruments placed in evidence Schmidt is referred to as “ lessee ” and the amounts to be paid by him as such lessee are referred to as “ rental.” There is no evidence, documentary or otherwise, to indicate that the parties at the time of entering into the various agreements considered or intended that the amounts here involved were to be additional payments by Schmidt for the common stock that he received. From a thorough consideration of the facts in the case, we are unable to find anything that would justify the conclusion that the amounts represented anything else than what the parties have denominated them. Accordingly, the action of the respondent is sustained.
*414 As an alternative contention, the petitioner urges that its accounts and those of Schmidt be consolidated in accordance with the provisions of section 240 (d) of the Revenue Act of 1924 and section 240 (f) of the Revenue Act of 1926. These sections, which are identical, provide as follows:
In any case of two or more related trades or businesses (wbetber unincorporated or incorporated and wbetber organized in tbe United States or not) owned or controlled directly or indirectly by tbe same interests, tbe Commissioner may and at tbe request of tbe taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions or capital between or among sucb related trades or businesses, consolidate tbe accounts of sucb related trades or businesses.
It was stipulated at the hearing that during the years here involved Schmidt was engaged in the general real estate and insurance business and that he held a considerable amount of real estate and personal property which he rented, managed and leased. The petitioner accordingly contends that its business and that of Schmidt were not only related and similar but were entirely controlled by a single interest; that had both businesses been conducted as corporations, consolidated returns would have been filed and that since such returns are precluded, the above quoted provision of the 1924 and 1926 Acts should be applied.
Granting, for the sake of argument, that the foregoing contention is correctly premised, the statute specifically provides that the consolidation of the accounts as provided for therein shall be made “if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions or capital between or among such related trades or businesses.” This requirement must be met in order for accounts to be consolidated. We are not convinced that this requirement has been met. The only transactions relied on by the petitioner involving the petitioner and the business of Schmidt are the rental payments made under the lease entered into between them in June, 1923. In our opinion these do not constitute such an intermingling of the accounts or the shifting of the profits of the two businesses in question as would necessitate the consolidation of the accounts in order to make the accurate distribution or apportionment contemplated by the statute. See Broadway Strand Theatre Co., 12 B. T. A. 1052. We think this contention of the petitioner must be denied.
Reviewed by the Board.

Judgment will he entered for the respondent.

Lansdon, Smith, Trussell, and Phillips dissent.